466 A.2d 550

**Michael PORRECA**

v.

**STATE of Maryland.**

**No. 1891, Sept. Term, 1982.**

Court of Special Appeals of Maryland.

Oct. 14, 1983.

See also 49 Md.App. 522, 433 A.2d 1204.

64

Gary S. Offutt, Asst. Public Defender, with whom was Alan H. Murrell, Public Defender, on the brief, for appellant.

Stephanie Lane, Asst. Atty. Gen., with whom were Stephen H. Sachs, Atty. Gen., Philip M. Andrews, Asst. Atty. Gen., Andrew L. Sonner, State's Atty. for Montgomery County, Roger Calvin, Asst. State's Atty. for Montgomery County on the brief, for appellee.

Argued before GILBERT, C.J., and LOWE and LISS, JJ.

LISS, Judge.

On July 8, 1980, appellant, Michael Porreca, was convicted in the Circuit Court for Montgomery County of attempted murder and assault and battery. Appellant's convictions were reversed by this Court in *Porreca v. State,* 49 Md.App. 522, 433 A.2d 1204 (1981),[1] and the case was remanded for a new trial. On remand, appellant pled guilty on February 25, 1982 to assault and battery, and was sentenced to ten years imprisonment. Eight and one-half years of his sentence were suspended upon condition of five years supervised probation upon parole with a special condition that appellant enroll in a mental health program as directed by the Department of Parole and Probation. Appellant was ordered to serve the remaining eighteen months at the Montgomery County Detention Center. He was paroled on August 20, 1982.

On November 5, 1982, the State filed a petition for revocation of appellant's probation. Hearing was held on November 24, 1982, and the presiding judge revoked appellant's probation and ordered him to serve the balance of his original sentence with a recommendation that he be con-

---

1. The sole issue raised in appellant's first appeal was whether appellant adduced sufficient evidence to place his sanity at issue.

sidered for Patuxent Institution. This appeal was seasonably filed and the following issues were presented for disposition:

I. Did the trial court lack jurisdiction to revoke appellant's probation?

II. Did the trial court err in finding that the appellant violated the terms of his probation and in reimposing the original sentence?

I.

■ Appellant argues that at the time sentence was imposed he was either imprisoned or paroled and that under these circumstances the trial court had no authority to commence the probationary period until parole was completed. He contends that the trial court could not have found him to be in violation of his probation in November of 1982 because his probationary period had not commenced and therefore the trial court lacked jurisdiction to reimpose sentence.

The appellant's contention in this case raises for the first time the propriety of the conditions of probation imposed by the trial court at the original sentencing, on February 25, 1982, when appellant was sentenced to a term of years and, *inter alia,* placed on "five years supervised probation upon parole with special condition that he enroll in Mental Health Program as directed by the Department of Parole and Probation." Appellant now makes this belated challenge, on appeal, from the revocation of probation. No direct appeal from the original judgment was filed at the time of imposition of sentence, nor was any question raised as to the validity of the sentence at that time. We stated in *Stone v. State,* 43 Md.App. 329, 336, 405 A.2d 345 (1979):

In *Finnegan v. State,* 4 Md.App. 396 [243 A.2d 36] (1968) this court said: "The validity of conditions of probation as set forth in the original sentence may be determined on appeal from the original judgment, *Bird v. State,* 231 Md. 432, 437–438 [190 A.2d 804], but not on appeal from revocation of probation, because to do so would, in effect,

permit a circumvention of Md.Rule 1012, which requires an appeal to be taken in thirty days." *Accord Coleman v. State,* 231 Md. 220, 189 A.2d 616 [189 A.2d 616] (1963).

Because the instant case is not an appeal from the original judgment but an appeal from the revocation of probation, appellant, in view of *Finnegan, supra,* is entitled to no relief here. He is, however, not without a remedy. He may apply to the trial court for correction of an illegal sentence under Maryland Rule 774 a, or he may seek relief under the Uniform Post Conviction Procedure Act. *See Smith v. State,* 31 Md.App. 310, 356 A.2d 320 (1976).

Unlike *Coles v. State,* 290 Md. 296, 429 A.2d 1029 (1981), the appellant has not presented to the trial court a request for correction of a perceived illegal sentence as contemplated by Maryland Rule 774 a. Appellant has not furnished us with a transcript of the original sentencing proceedings and from what we have before us we conclude that not only did appellant fail to object to the sentence as imposed by the trial court but that he tacitly accepted the sentence imposed and was under no misapprehension regarding when probation began or the conditions of probation applied. Under these circumstances, appellant is not entitled to the relief sought here. Maryland Rule 1085; *c.f., Kupfer v. State,* 287 Md. 540, 414 A.2d 907 (1980).

## II.A.

Appellant next argues that the trial court erred in revoking the probationary term imposed because the trial judge primarily relied on his finding that the appellant failed to obtain permission from his probation agent before owning, possessing, using or having under his control any dangerous weapon or firearm of any description. Appellant had in his possession and under his control a knife seen by various people on November 1 and 2 of 1982.

The testimony to support the violation of probation indicated that on November 2, 1982, appellant came into the Maryland College of Art and Design dressed in a black

kimono carrying a large bamboo pole. He had on baggy slacks with a sash or rope tied around his waist and a knife dangling from the sash or rope. The knife was a butter knife or kitchen knife about eight inches long described as a standard eating utensil-type knife of stainless steel. The appellant then engaged the President of the college in incoherent conversation during the course of which he held up the knife and stated, "I wear this as an example of the time that I stabbed Laurie forty times." [This statement referred to the original case against the defendant in which he had been convicted of stabbing a young girl forty times with a knife.] The President of the college continued to testify as follows:

Q  All right. What did you do?

A  I continued to talk to Michael. Michael also wanted to put a poster up at the college which he showed me which said "Tricks for Kids". And he asked me if he could put that around the school and he said that he was passing out candy to the kids in the neighborhood and he opened the bag and he produced a bag of candy and showed me the candy. And then he also said now he was very concerned, he said, about perverts and deviants and he held up—pulled out of his bag a razor blade and a retractable kind of a razor and laid that on the counter and then continued to talk about the tricks for kids and about his wind chime project and other things like that. He then stayed for about maybe another two or three minutes. I had to leave. I had an appointment in my office and he left the college.

On cross-examination the witness admitted that appellant did not at any time threaten him or indicate any intention to commit a violent act.

The appellant's therapeutic counselor also appeared and testified in support of the revocation proceedings. He stated he believed appellant had definite psychiatric problems and needed a structured environment. He testified concerning the appellant's missing two group therapy sessions. Appellant's probation officer testified she filed the violation

of probation petition on the facts she received from the various witnesses. She concluded as follows:

> I feel Mr. Porreca has demonstrated that he is a threat either to himself or to society and in order to protect society and himself from that I feel he does need to be in a structured environment. And I would recommend that his probation be revoked.

On the basis of the evidence before him the trial judge concluded that the appellant violated his probation by carrying the knife openly, and said in revoking probation:

> THE COURT: Very well. I conclude the Defendant's violated the terms of his probation. I believe that he should be receiving treatment in a structured environment. I revoke the contract of probation that was issued in this case, order the balance of the sentence to be executed with an urgent recommendation that the Defendant be placed at the Patuxent Institution.

■ Appellant concedes that the knife in question may be classified as a dangerous weapon; however, he urges that on the facts in this case the trial court erred in finding that appellant violated the third condition of his probation. Appellant relies primarily on *Bennett v. State,* 237 Md. 212, 205 A.2d 393 (1964), as authority for his contention that under the facts of this case the knife here involved should not have been considered a dangerous weapon. In order to be considered as a dangerous weapon, "it must be used in such a way as is likely to produce death or grievous bodily harm." *Bennett v. State, supra,* at 214, 205 A.2d 393. We think *Bennett* is distinguishable from the case at bar. In *Bennett* the Court had before it a conviction for the use of a microphone cord for the purpose of choking a taxicab driver in perpetrating a robbery with a dangerous and deadly weapon. In this case the presiding judge was only required to be reasonably satisfied that there was in fact a violation of a condition of probation, not of a criminal statute. *Dean v. State,* 291 Md. 198, 434 A.2d 552 (1981).

■ The original conviction for which appellant had been placed on probation involved an alleged stabbing of the victim at least forty times. Appellant's bizarre behavior generally and especially in connection with the carrying of the knife; the carrying of the razor blade and retractable razor; his statements of his concern about "perverts and deviants"; his statement that he wore the knife as an example of the time that "I stabbed Laurie forty times" were all persuasive evidence that the appellant had violated his conditions of probation.

Appellant ignores two other violations of the conditions of probation with which he was charged and which support the trial court's conclusion. The petition for revocation specifically charged the appellant with violation of condition four (obey all laws) of the probation order and special condition ten (to attend group counseling). The State introduced testimony as to all three of the alleged violations, and defense counsel, in closing argument, argued each of the alleged violations. The trial court, after hearing argument, indicated, "I'm satisfied he violated his probation and I so find." The judge decided that appellant violated the "terms" of his probation on the basis of the evidence before him and his final conclusion that appellant required "treatment in a structured environment." We find no error in that conclusion.

## II.B.

Finally, appellant argues that the revocation of his probation was arbitrary or capricious. We do not agree. Appellant relies primarily on *Herold v. State,* 52 Md.App. 295, 449 A.2d 429 (1982), to support his contention. In *Herold,* this Court noted that a probationer had been willing to undergo therapy and had secured the services of a forensic psychologist toward that end. We found that the trial court in *Herold* had improperly imposed an implicit "special condition" of probation that he was required to "improve his mental condition to achieve mental stability" by attendance

at a *particular* mental health program. We remanded the case for further proceedings, upon our finding that the appellant had demonstrated a convincing attempt to comply with the mental health counseling requirement of probation. In this case there was evidence of a failure to attend the counseling sessions required by the probation conditions imposed by the sentencing court.

■ Appellant contends that because the trial court in his oral summation indicated concern for the appellant's mental health, the "real" basis for revoking probation was that the court felt that the respondent required treatment rather than that he had actually violated his probation. As this Court said in *Herold, supra,* "because probation is a matter of grace, not entitlement, and permits the wrongdoer to keep his freedom as long as he conducts himself in a manner consonant with established communal standards and the safety of society," the trial court must consider "whether probation should be revoked or whether other actions are more appropriate to protect society and improve the probationer's chance of rehabilitation." 52 Md.App. at 301–02, 449 A.2d 429.

■ When the trial court had before it evidence of violations of the conditions of probation and the testimony of the therapeutic counselor and the probation agent that the appellant had demonstrated that he was a threat either to himself or to society and that in order to protect him and society it was necessary that the appellant be confined and treated in a structured environment, the court was more than justified in revoking probation and imposing the original sentence. It should be noted that the judge recognized his obligation to make reasonable efforts at rehabilitation when his order provided for an urgent recommendation that the appellant be placed at the Patuxent Institution.

JUDGMENT AFFIRMED, COSTS TO BE PAID BY APPELLANT.