612 A.2d 335
**Ray Terry BALDERSTON**
v.
**STATE of Maryland.**
No. 1800, Sept. Term, 1991.
Court of Special Appeals of Maryland.
Sept. 9, 1992.

Victoria S. Lansburgh, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Tarra DeShields–Minnis, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Andrew L. Sonner, State's Atty., for Montgomery County of Rockville, on the brief), for appellee.

Submitted before BISHOP, GARRITY and MOTZ, JJ.

MOTZ, Judge.

The sole question presented in this appeal is whether voluntary home confinement, undertaken as a condition of probation, constitutes "custody" which must be considered for purposes of sentencing credit. Under the limited facts of this case, we hold that it does not.[1]

---

1. This opinion does not address the "home detention" program described in Md.Ann.Code art 27, § 689A. Participation in that program

Appellant, Ray Terry Balderston, pled guilty in the Circuit Court for Montgomery County (Messitte, J.) to driving while under the influence of alcohol. Appellant had four prior convictions for driving while intoxicated but had always been placed on probation and then resumed driving while intoxicated. Nevertheless, his defense counsel argued that, because he had entered an alcohol treatment program and had been sober for seven months, he again should be given a suspended sentence, this time with home confinement[2] and attendance at an alcohol treatment program imposed as conditions of probation. Defense counsel conceded that "there is no question that my client deserves jail." Moreover, he expressly recognized "home confinement is not being asked in lieu of jail. It is being asked as a condition of probation." The State's Attorney opposed the request for a suspended sentence and home confinement as a condition of probation. He argued that a 60–day jail sentence was appropriate, that if "ever there was a candidate that the legislature had in min[d] when enacting the [jail] sentence, this is probably it," that appellant had never been incarcerated, but instead had been given "every opportunity" and had still continued to abuse alcohol. Appellant himself then also requested leniency, recognizing "60 days [in jail] is deservable" but that he had family "responsibilities" (support of a sick father) which should influence the court not to impose a jail sentence.

After considering all of these arguments, the court sentenced appellant to the Montgomery County Detention Center for a period of 60 days, with 45 of those days suspended

is limited to "inmates committed to the custody" of the Commissioner of Correction. Md.Ann.Code art. 27, § 689A(b). Appellant was never "committed to the custody" of the Commissioner.

**2.** Although the home confinement program is not described with specificity in the record, appellant's trial counsel indicated that it involved wearing "an ankle or a wrist bracelet that is passive. If he walks away from the phone and is 700 feet away, snap, an alarm goes off and he has violated" but it would permit appellant to continue to work and to go to AA programs.

in favor of a two-year term of probation.  As special conditions of probation, appellant was ordered to spend 45 days in a home confinement program; to attend Alcoholics Anonymous meetings as ordered by his probation agent; and to complete the White Flint Recovery Program, a privately-run program for the treatment of alcoholism.  At some point after he completed his 45 days in home confinement, appellant stopped going to the White Flint Recovery Program and was terminated from the program.  After a hearing, appellant was found to have violated his probation by failing to complete the White Flint Recovery Program; his probation was revoked, and the remainder of his original sentence was reinstated.

Appellant argues that home confinement is tantamount to imprisonment, or at least custodial confinement, and that he is entitled to credit against the remainder of his sentence, pursuant to Md.Ann.Code art. 27, § 638C, for the 45 days he spent in home confinement.[3]  Section 638C(a) provides in relevant part:

> Credit for time spent in custody before conviction or acquittal.—Any person who is convicted and sentenced shall receive credit against the term of a definite or life sentence ... for all time spent in the custody of any state, county or city jail, correctional institution, hospital, mental hospital or other agency as a result of the charge for which sentence is imposed or as a result of the conduct on which the charge is based.

Appellant asserts that home confinement is being "in custody" of an "other agency," within the meaning of § 638C(a).

The Court of Appeals addressed an analogous, but not identical, question in *Maus v. State*, 311 Md. 85, 532 A.2d 1066 (1987).  There, the defendant was placed on probation for a period of five years following his conviction for storehouse breaking.  As a condition of his probation, at his own request, Maus was to enroll in and complete the Second

---

**3.**  Appellant makes no constitutional claim.

Genesis drug rehabilitation program. *Id.* at 96, 532 A.2d 1066. Maus entered the program and successfully completed it, but during his probation was arrested and convicted of certain other offenses. *Id.* His probation was revoked, and execution of the original sentence of five years imprisonment was ordered. *Id.* Maus contended that, pursuant to Article 27, § 638C(a), he was entitled to credit for the time that he spent in Second Genesis because his stay in Second Genesis was tantamount to imprisonment. *Id.* at 97, 532 A.2d 1066. Maus introduced evidence that showed that Second Genesis was a tightly controlled facility providing a structured, supervised environment seven days a week, twenty-four hours a day. *Id.*

In determining whether this restrictive environment qualified as "custody" within the meaning of § 638C(a), the Court of Appeals in *Maus* observed that "[t]he word 'custody' can have a great variety of meanings and so can the words 'other agency.' " *Id.* at 101, 532 A.2d 1066. Upon examining the legislative history of the statute, the Court noted that:

> Section 638C(a) was enacted by Ch. 735, Acts of 1974. The title of Ch. 735 tells us no more than the statutory language does. One amendment made during its passage, however, may contain a clue. When Ch. 735 was introduced as H.B. 650 (1974), the phrase on which we now focus referred to "time spent under the supervision or under the custody of any state, county or city jail" etc. The words "under the supervision or" were deleted by amendment.

*Id.* By omitting the words "under the supervision," the *Maus* Court observed, the legislature was perhaps emphasizing that the type of custody that would qualify for credit against a sentence was incarcerative custody, and not mere supervision. *Id.* That is, the "custody had to be involuntary and pursuant to a court commitment to a public institution." *Id.* Since Maus was not, and indeed, could not be committed by a court to the Second Genesis facility, the Court reasoned that residence in Second Genesis was not

"custody" within the meaning of § 638C(a), and so Maus was not entitled to credit against his sentence for the time spent in Second Genesis. *Id.* at 105, 532 A.2d 1066.[4]

Appellant's only attempt to distinguish his situation from that in *Maus* is to argue that the facility involved in that case had "therapeutic goal[s]; [and is] not in any sense 'punitive,' " while here, "appellant's treatment needs were to be served elsewhere." Granted, the facility in *Maus* had "therapeutic goals"; that factor was not, however, in any way the basis of the court's holding. Rather, its holding that residence in a facility like Second Genesis was "not custody" within the context of the statute, was based on two factors. First, and more significantly, the court concluded that, although such confinement was restrictive, it was not imposed as punishment by the sentencing court, but was chosen by the defendant himself and so could not constitute "custody." Second, it noted that Second Genesis was a private facility and so there was no custody in a public institution.

At least the first consideration is equally applicable here.[5] The Second Genesis program involved restrictions that removed the defendant from the home and placed him in an institutional-like setting in which he had to conform to the

---

**4.** *See also Stinchcomb v. State,* 80 Md.App. 274, 280, 562 A.2d 781 (1989), (residence in a state mental health facility is not "custody" within the meaning of § 638C(a)).

**5.** The record is not clear whether the home confinement program at issue here is a private program or under the auspices of the local law enforcement authorities. *But see, supra,* n. 1. Hence, it is conceivable that appellant, unlike Maus, is under the supervision of public, rather than private, officials. This distinction (which is not even raised by appellant) is, however, not determinative because it is as clear here, as it was in *Maus* (and perhaps more so), that appellant was not "in custody." Thus, even when an intermediate appellate court held, contrary to *Maus,* that time spent in a drug rehabilitation program as a condition of probation was time spent "in custody" for purposes of sentencing credit it noted that "confinement to one's own home as a condition of probation would *not* qualify a defendant for presentence incarceration credit." *State v. Reynolds,* 168 Ariz. 580, 816 P.2d 237, 241 (App.1991), *vacated,* 170 Ariz. 233, 823 P.2d 681 (1992) (emphasis added).

rules of the facility. The Court of Appeals held that even such removal from the home and restrictions on behavior and activities was not "custody," within the meaning of § 638C because it was voluntary and not court imposed. Given this holding, certainly voluntary home detention, a situation in which a defendant can leave his home to go to work, and has freedom of movement and association within his home, cannot be considered "custodial," or the equivalent of custody. On the contrary, the reason appellant requested that he be permitted to participate in home confinement is because it is *not* the equivalent of custody, *i.e.*, he could tend to his responsibilities and maintain his job. Thus, we reject appellant's argument that voluntary home confinement is the equivalent of "custody," and hold that, contrary to his claim, he is not entitled, as a matter of right, to sentencing credit for the 45 days he spent in voluntary home confinement.[6]

Our holding is in accord with that of other jurisdictions. For example, in *State v. Pettis*, 149 Wis.2d 207, 441 N.W.2d 247, *review denied*, 439 N.W.2d 144 (Wis.1989), a Wisconsin appellate court came to the same conclusion in interpreting a statute very similar to § 638C(a). There, a defendant convicted of theft was placed on bail pending appeal on the condition that he remain in "home detention" during nonworking hours and when not receiving treatment for his drinking problem. *Id.* 441 N.W.2d at 248. After his theft

---

6. Of course, the circuit court may, in its discretion, weigh the time a defendant spent in home confinement in determining the appropriate disposition following the defendant's violation of probation. *See Maus*, 311 Md. at 107–08, 532 A.2d 1066. Appellant does not assert that the circuit court abused its discretion in failing to consider this in the case at hand. Moreover, appellant's characterization of the proceedings at the probation revocation hearing indicates that no argument of abuse of discretion was made there. Furthermore, although it is his burden, *see Jefferson v. State*, 218 Md. 397, 147 A.2d 204 (1958); *Terrell v. State*, 34 Md.App. 418, 367 A.2d 95 (1977); *Callahan v. Dean*, 17 Md.App. 67, 299 A.2d 479 (1973), appellant has submitted no transcript of the probation revocation hearing. Accordingly, there is no basis for a holding of abuse of discretion here. *Compare Maus* at 108, 532 A.2d 1066.

conviction was affirmed, the defendant asked that the 135 days spent under "home detention" be credited against his theft sentence. *Id.* The Wisconsin statute, like § 638C(a), provided that a convicted offender "shall" be given "credit" for "all" time "spent in custody" in connection with the conduct for which sentence was imposed.[7] The court held that the defendant was not in custody for purposes of this statute, noting that he was not confined or physically detained by "an institution, or by any guard or peace officer of such institution." *Id.* at 249–50. Moreover, relying on *State v. Cobb,* 135 Wis.2d 181, 400 N.W.2d 9 (App.1986) which, like *Maus,* held confinement in a treatment facility as a condition of probation did not constitute "custody" for purposes of sentence credit, the *Pettis* Court held "restriction on movement," as a condition of bail, does not constitute custody even if "negative consequences [increase of bail or charges of violation of bail] can result from failure to obey restrictions." *Pettis,* 441 N.W.2d at 250.

*See also United States v. Wickman,* 955 F.2d 592, 593 (8th Cir.1992) (en banc) ("house arrest," as a condition of pretrial release, does not constitute "official detention" for sentencing credit under 18 U.S.C. § 3585(b)); *United States v. Becak,* 954 F.2d 386, 387 (6th Cir.1992) (same); *United States v. Zackular,* 945 F.2d 423, 425 (1st Cir.1991) (voluntary, presentence "confinement to the comfort of one's home is not the functional equivalent of incarceration"); *People v. Ramos,* 138 Ill.2d 152, 149 Ill.Dec. 273, 277, 561 N.E.2d 643, 647 (1990) (home confinement, as a condition of pretrial release, is not equivalent to "confinement in a jail or prison" because an "offender who is detained at home is not subject to the regimentation of penal institutions" but "once inside the residence enjoys unrestricted freedom of activity, movement and association. Furthermore, a defen-

---

7. The Wisconsin statute provided in its entirety:
   A convicted offender shall be given credit toward the service of his or her sentence for all days spent in custody in connection with the course of conduct for which sentence was imposed.
   Wis.Stat.Ann. § 973.155(1)(a) (1985).

dant confined to his residence does not suffer the same surveillance and lack of privacy associated with becoming a member of an incarcerated population"); *People v. Denning,* 204 Ill.App.3d 720, 149 Ill.Dec. 890, 891, 562 N.E.2d 354, 355 (1990) (defendant not entitled to credit against sentence for time spent in home confinement as a condition of probation); *People v. Bridgman,* 228 Cal.App.3d 949, 279 Cal.Rptr. 101, 102 (1991) (home detention during pretrial release not "custody" for purposes of sentencing credit because "concept of custody generally connotes a facility rather than a home. It includes some aspect of regulation of behavior [and] ... supervision in a structured life style"); *Heitman v. State,* 622 S.W.2d 760 (Mo.App.1981) (no sentencing credit for home confinement as a condition of pretrial release). *Cf. State v. Speaks,* 119 Wash.2d 204, 829 P.2d 1096, 1098 (1992) (defendant entitled to credit against sentence for time spent in involuntary "home detention" where statute provides credit for all "confinement" and explicitly includes "home detention" in definition of confinement).

Thus, the trial court did not err in finding that appellant was not entitled credit, as of right, against his original sentence for the time he spent in voluntary home confinement.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.